IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                              NO.  CR 05-217 RB

ROBERTO GUTIERREZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on seven pending motions:  1) Defendant's ("Mr. Gutierrez") motion to suppress; 2) Mr. Gutierrez's motion to produce confidential informant ("CI"); 3) Mr. Gutierrez's motion to produce exculpatory evidence; 4) Mr. Gutierrez's motion to produce Grand Jury transcripts; 5) Mr. Gutierrez's motion to inspect the jury record; 6) Mr. Gutierrez's Rule 404(b) motion *in limine*; and 7) the Government's motion for special trial setting.  For the following reasons, the Court DENIES the Government's motion for special trial setting as moot, GRANTS Mr. Gutierrez's motion *in limine*, and DENIES Mr. Gutierrez's remaining motions.

**I. Factual background.**

    The F.B.I. began investigating Mr. Gutierrez after receiving information that he was engaged in sexual activities with young boys.  The authorities also received information that Mr. Gutierrez was involved in narcotics trafficking near his mother's house, at 1404 N. Washington in Roswell, New Mexico.  In September, 2004, Chaves County Narcotics Agent Eric Brackeen stopped Mr. Gutierrez's truck near his mother's house and found approximately $3,500 in U.S. currency in the truck.  Agent Brackeen never seized the currency and no arrest was made pursuant to this stop.

On November 23, 2004, a CI contacted Chaves County Sheriff's Detective Charles Yslas regarding Mr. Gutierrez's narcotics activities. At that time, Mr. Gutierrez lived at 1800 South Pennsylvania, Apartment #46, in Roswell. The CI told Detective Yslas that Mr. Gutierrez sold methamphetamine at the residence of an elderly man, Miterio Peralta, at 1101 N. Kansas Street in Roswell. The CI also stated that Mr. Gutierrez kept the methamphetamine buried in the backyard of the Kansas Street residence.

Based on the CI's information, the state district court issued a search warrant on December 3, 2004, for the Kansas Street residence of Mr. Peralta. During the execution of the warrant that same day, agents noticed a ladder in the back yard of the residence leaning against a wall. On the other side of the fence was a vacant lot. The agents obtained consent from Mr. Killgo, the owner of the lot, to search the lot. On the lot, agents discovered approximately eight pounds of suspected methamphetamine. Agents also found packaging materials, a digital scale, and a cellular telephone receipt with Mr. Gutierrez's name on it in the area.

Agents then arrested Mr. Gutierrez on the front porch of his mother's house, at 1404 North Washington. Chaves County Sheriff's Detective Jeff Tutor obtained oral and written consent from Mr. Gutierrez's mother, Lola Whitacre, to search her house. Detective Tutor, Detective Yslas, and other agents on the scene found no evidence of a crime in the mother's house at 1404 North Washington.

After Mr. Gutierrez's arrest, the agents learned that Mr. Gutierrez's sister, Virginia Miller, resided in the house next to his mother's at 1406 North Washington and owned the entire property, which included the houses at 1404 and 1406 North Washington and the shared backyard (no fences or other boundaries demarcated the back area as two separate yards). In addition, the CI contacted

Detective Yslas and told him that Mr. Gutierrez buried the money he received from selling methamphetamine in the backyard of his mother's house.

Detective Tutor then explained to Mr. Gutierrez's sister, Ms. Miller, that he believed Mr. Gutierrez hid evidence of drug trafficking on the property. Although a dispute exists as to what Detective Tutor told Ms. Miller, I resolve this dispute in the detective's favor and find that he indicated to Ms. Miller an intention to dig in the yard in an effort to uncover contraband. Detective Tutor received oral consent from Ms. Miller to search the property and Ms. Miller signed a written consent form to search the "house *and property*" at 1406 North Washington. During the search, the agents discovered three plastic containers buried under a tree in the back yard of the residences. The containers held in excess of $75,000.00 in U.S. currency.

On February 3, 2005, a Grand Jury indicted Mr. Gutierrez for possession with intent to distribute 500 grams and more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

**II. Analysis.**

**1. Mr. Gutierrez's motion to suppress.**

Mr. Gutierrez moves to suppress the methamphetamine and paraphernalia seized from the vacant lot and the $75,000.00 found in his mother's and sister's backyard. He argues that the warrantless search of the lot was invalid, his mother's and sister's consents were invalid, and the search under the ground in the backyard exceeded the scope of consent. The Government contends that the motion should be denied because Mr. Gutierrez lacks standing to contest the searches and that the consents were valid.

The Fourth Amendment prohibits government agents from conducting unreasonable searches

and seizures. U.S. CONST. amend. IV. To demonstrate that a search or seizure violates the Fourth Amendment, a defendant must prove that he had a legitimate expectation of privacy in the place searched or the item seized. *United States v. Angevine*, 281 F.3d 1130, 1134 (10th Cir. 2002) (*citing Rakas v. Illinois*, 439 U.S. 128, 143 (1978)). In other words, Mr. Gutierrez must show that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable. *United States v. Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002).

In this case, Mr. Gutierrez had no expectation of privacy in the vacant lot behind Mr. Peralta's house. Mr. Gutierrez testified that he visited Mr. Peralta at 1101 North Kansas frequently. The vacant lot, however, was located at 814 West 12th street and was owned by a Mr. Killgo, who allowed law enforcement officials to search the lot. Mr. Gutierrez, therefore, lacks standing to challenge the search of the vacant lot. Because Mr. Gutierrez has no standing to challenge the search of the lot, the Court DENIES his motion to suppress with respect to the evidence found there.

With respect to the sister's property, the Supreme Court has explained that overnight guests have a reasonable expectation of privacy in the home of their host. *Minnesota v. Olson*, 495 U.S. 91, 98 (1990). In addition, the Tenth Circuit has held that social guests have a reasonable expectation of privacy in the host's home and may therefore challenge a search of the home on Fourth Amendment grounds. *United States v. Rhiger*, 315 F.3d 1283, 1286-87 (10th Cir. 2003). In *Rhiger*, however, the Tenth Circuit noted that "Mr. Rhiger's regular presence at the home, his overnight stays, the discovery of his receipts in the house, and his comfort in entering the residence unannounced and taking a nap, all support our determination that Mr. Rhiger had an ongoing and meaningful connection to Mr. Brown's home as a social guest." *Id.* at 1287.

Mr. Gutierrez testified that he visited his mother at 1404 North Washington nearly every

4

morning. He said that he would often have coffee with her and would occasionally come in the evening to watch the news. Mr. Gutierrez did not have a key to either his mother's or sister's house, never stayed at either residence overnight, and did not have any personal belongings in either house. In fact, Mr. Gutierrez rarely visited with his sister at 1406 North Washington. The brief morning visits with his mother do not appear to establish the "meaningful connection" to his mother's house necessary to achieve standing as a social guest. *Id.* And Mr. Gutierrez had virtually no connection to his sister's house at 1406 North Washington. Even if Mr. Gutierrez did have standing to challenge the search at his sister's property, however, the consents given by his mother and sister were valid.

Agents arrested Mr. Gutierrez outside his mother's house at 1404 North Washington. That residence shares a yard with his sister's residence. His sister owns the entire property on which her and her mother's residences sit. Agents obtained oral and written consent to search from Mr. Gutierrez's mother and from his sister. A third party's consent to search is valid if that person has either the "actual authority" or the "apparent authority" to consent to a search of that property. *United States v. Kimoana*, 383 F.3d 1215, 1221 (10th Cir. 2004). The sister had actual authority as the property owner and the mother had the apparent authority to consent to the searches.

Mr. Gutierrez argues that their consent was not voluntary. The Government has the burden of proving that the consent was freely and voluntarily given. *Kimoana*, 383 F.3d at 1225. Consent is voluntary if there is no indication of either force or intimidation. *Id.* Voluntariness is a question of fact to be determined from all the circumstances. *Id.*

Mr. Gutierrez's mother and sister both testified that the agents did not brandish firearms and in no way displayed force in obtaining their consent to search. Moreover, neither Mr. Gutierrez's mother or his sister ever objected to the search of their homes and the shared backyard. The agents

explained the purpose of their search and received both oral and written consent to search the premises. Under the totality of the circumstances, therefore, the mother and sister voluntarily consented to the search of the property.

Lastly, Mr. Gutierrez claims that the agents exceeded the scope of consent by digging in the backyard. The Supreme Court has explained that the "scope of a search is generally defined by its expressed object." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Consent to search for specific items includes consent to search those areas or containers that might reasonably contain those items. *Id.*; *United States v. Wacker*, 72 F.3d 1453, 1470 (10th Cir. 1995). Whether a search remains within the boundaries of the consent is a question of fact to be determined from the totality of the circumstances. *United States v. Pena*, 920 F.2d 1509, 1514 (10th Cir. 1990). In ascertaining whether officers exceeded the scope of consent, the Court must view the facts in the light most favorable to the Government. *Id.* at 1514-15.

Detective Tutor conceded that the search of the mother's house at 1404 North Washington was limited to the residence. The sister, however, owned the entire lot on which both residences sat. Detective Tutor explained to her that the agents suspected they would find contraband in her backyard. He told her that the agents wanted to search her *property*, not just her house, for evidence of contraband. The sister orally consented to the search and signed a written consent form authorizing agents to search the house and *property* at 1406 North Washington. The mother and sister shared the same backyard--there was no fence or other demarcation separating the back portions of the houses from each other. Agents had previously found methamphetamine buried at the vacant lot and the CI told the agents that Mr. Gutierrez hid the cash from his drug transactions in the backyard. Based on this information, the officers reasonably believed that the backyard

contained contraband.

Because the sister's consent to the search of her *property* encompassed a search of the backyard, the agents' search did not exceed the scope of consent. For the foregoing reasons, therefore, the Court DENIES Mr. Gutierrez's motion to suppress the methamphetamine, drug paraphernalia, and cash found at the vacant lot and the yard behind his mother's and sister's houses.

**2. Mr. Gutierrez's motion to produce confidential informant.**

Mr. Gutierrez requests an order requiring the Government to disclose the identity of the CI. The Government states that it will call the CI to testify at trial. The Tenth Circuit has held that "[a] defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case." *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999) (citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957)). The Tenth Circuit explained that "[i]n determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* The Court "conducts this balancing in light of the crime charged, the possible defenses, and the significance of the informant's testimony . . . [and] [w]here it is clear that the informant cannot aid the defense, the government's interest in keeping secret [the informant's] identity must prevail over the defendant's asserted right of disclosure." *Id.*

In this case, the CI will testify at trial. This rules out the possibility that the pretrial disclosure of the CI's identity would help the defense. The Tenth Circuit has held that where the informant testifies the Government need not disclose his or her identity prior to trial. *United States v. Pennick*, 500 F.2d 184, 186-87 (10th Cir. 1974). Because Mr. Gutierrez may cross examine the CI at trial, he is not entitled to disclosure of the Government's witness before trial. The Court, therefore, DENIES

Mr. Gutierrez's motion to produce the CI.

### 3. Mr. Gutierrez's motion to produce exculpatory evidence.

Mr. Gutierrez seeks the F.B.I's file from its investigation prior to his arrest. He claims that the F.B.I had him under surveillance from October 2002 until his arrest and that the file contains exculpatory information. However, there is no general constitutional right to discovery in a criminal case. *United States v. Hernandez-Muniz,* 170 F.3d 1007, 1011 (10th Cir. 1999); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Information already possessed by the defense and information already available to the defense from other sources need not be disclosed. *United States v. Reed*, 1 F.3d 1105, 1109-10 (10th Cir. 1993). The Court, therefore DENIES Mr. Gutierrez's motion.

### 4. Mr. Gutierrez's motion to produce GJ transcripts.

The Jenks Act, 18 U.S.C. § 3500(a), provides that: "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection *until said witness has testified on direct examination in the trial of the case*." (emphasis added). Moreover, a defendant seeking pre-trial disclosure of Grand Jury transcripts not covered by the Jenks Act must demonstrate a "particular" or "compelling" need for the transcripts, which outweighs the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." *See United States v. Evans & Associates Constr. Co., Inc.*, 839 F.2d 656, 658 (10th Cir. 1988); *see also United States v. Pelliere,* 57 F.3d 936 (10th Cir. 1995).

Mr. Gutierrez contends that he has a particularized need "for pretrial disclosure of the grand jury proceedings . . . because the Government has alleged that Mr. Gutierrez is involved in drug

distribution activities, but Mr. Gutierrez claims that these claims are erroneous." (Mot. at 3). He argues that he needs to review the transcripts for purposes of cross-examination and to "evaluate the government's identification testimony." *Id.*

In *Evans*, 839 F.2d at 658, the Tenth Circuit held that the defendants had demonstrated a particularized need for transcripts due to the fact that the events at issue occurred nearly twenty years prior to the Indictment; the Grand Jury testimony was the only source of "fresh" testimony available; the charges were complex; the voluminous evidence detailed a 13-year course of conduct; the Government intended to call fifty witnesses to introduce hundreds of documents; and the testimony consisting of statements made by witnesses who testified in support of the conspiracy would be uncorroborated.

In this case, the evidence against Mr. Gutierrez consists of a tip from a confidential informant, which led to the discovery of eight pounds of methamphetamine in an empty lot where documents in his name were recovered. The tip also led to the discovery of $75,000 buried on his sister's property.

These facts do not constitute the particularized need the Tenth Circuit found present in *Evans*. Moreover, since no witnesses have testified yet, the transcripts do not fall under the Jenks Act. The Court, therefore, DENIES Mr. Gutierrez's motion for production of Grand Jury transcripts.

**5. Mr. Gutierrez's motion to inspect jury records.**

Mr. Gutierrez contends that the Court's use of voter registration records to select petit juries has excluded a representative number of Hispanic and Native American individuals from serving on juries.

In order to establish a *prima facie* Sixth Amendment violation Mr. Gutierrez must show 1)

9

that the group alleged to be excluded is a distinctive group in the community; 2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and 3) that this under representation is due to systematic exclusion of the group in the jury-selection process. *United States v. Gault*, 141 F.3d 1399, 1402 (10th Cir. 1998). In order to establish a Fifth Amendment equal protection violation Mr. Gutierrez must show that the use of voter registration lists resulted in the substantial under representation of a recognizable distinct class over a significant period of time. *Id.* Because "Fifth Amendment equal protection and Sixth Amendment fair-cross section cases . . . require similar showings" they should be addressed concurrently. *Id.*

In *Gault*, 141 F.3d at 1403, the Tenth Circuit held that the use of a voter registration list to select juries does not systematically exclude Hispanics and Native Americans. The Court, therefore, will DENY Mr. Gutierrez's motion to inspect jury records at this time, but will grant Mr. Gutierrez leave to reassert his motion after the venire is sworn in if he has a particular, articulable challenge to this panel.

**6. Mr. Gutierrez's Rule 404(b) motion *in limine*.**

Mr. Gutierrez seeks to exclude evidence of two other wrongful acts: 1) that the F.B.I first began to investigate him after receiving information that he engaged in sexual activities with young boys; and 2) after receiving information of high traffic near Mr. Gutierrez's mother's house, Chavez County Narcotics Agent Eric Brackeen found about $3,500 of U.S. currency in Mr. Gutierrez's truck pursuant to a stop. Because the Government has agreed not to introduce evidence regarding any improper contact between Mr. Gutierrez and young boys, the Court will GRANT Mr. Gutierrez's motion without objection from the Government. The Court now turns to the admissibility of the

evidence surrounding Agent Brackeen's stop.

Evidence of other wrongful acts is admissible under Rule 404(b) if four requirements are met: 1) the evidence is offered for a proper purpose (such as poof of intent, plan, knowledge, or absence of mistake); 2) the evidence is relevant under Rule 401; 3) the probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403; and 4) the Court instructs the jury to consider the evidence only for the purpose for which it was admitted. *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001).

In this case, the $3,500 Agent Brackeen found in Mr. Gutierrez's truck fails the *Tan* test. It would likely be offered to prove Mr. Gutierrez's plan or intent to distribute narcotics. The stop, however, occurred in September 2004, nearly three months before the conduct for which Mr. Gutierrez was arrested occurred. Moreover, Agent Brackeen returned the cash found in Mr. Gutierrez's vehicle to him. This stop is not relevant to the instant offense because the methamphetamine discovered in the lot and the large sum of cash ($75,000) were both found on the day of Mr. Gutierrez's arrest--December 3, 2004. While the presence of cash in Mr. Gutierrez's truck may be probative as to Mr. Gutierrez's drug trafficking activities, the danger of unfair prejudice substantially outweighs the probative value of this evidence. The Court, therefore, GRANTS Mr. Gutierrez's motion with respect to this evidence. Mr. Gutierrez's motion *in limine* is GRANTED in its entirety.

**7. The Government's motion for special trial setting after July 21, 2005.**

This case is set for trial on August 17, 2005. The Court, therefore, DENIES the Government's motion as moot.

**III. Conclusion.**

The Court DENIES the Government's motion for special trial setting as moot and GRANTS Mr. Gutierrez's motion *in limine* in its entirety. The Court hereby DENIES Mr. Gutierrez's remaining motions.

*/s/ Robert Brack*

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**